ADAMS, Justice.
This is an appeal from the denial of a motion by the plaintiff, the Water Works and Sewer Board of the City of Birmingham (hereinafter “the Board”), to enjoin Shelby County from operating an interim waste water treatment facility on Hugh Daniel Drive. The facility itself is located in the watershed of Lake Purdy, which provides 40%-60% of the water for Birmingham residents; however, the discharge of effluents is outside the watershed.
The Board contends that Shelby County is operating the Hugh Daniel facility without the necessary National Pollutant Discharge Elimination System (“NPDES”) permit. Thus, the Board argues, Shelby County is in violation of the following statute:
“Every person, prior to discharging any new or increased pollution into the waters of this state, shall apply to the commission in writing for a permit.”
Section 22—22—9(i)(3), Code of Alabama 1975. In support of its position, the Board cites our recent case of Hereford v. City of Linden, 540 So.2d 49 (Ala.1988), wherein the City of Linden had failed to obtain a required permit before drilling a test well, and we required it to obtain such a permit.
It is conceded that a permit was initially issued to Daniel Realty Corporation for the above-stated discharge point. This permit was later transferred to D & D Water Renovators, Inc., in compliance with the ADEM regulation requiring 30 days’ notice prior to transfer. Pursuant to regulation, D & D subsequently notified ADEM, 180 days prior to the expiration of its permit, that it planned to seek renewal thereof. Thereafter, an agency agreement was entered into between D & D and Shelby County in order that Shelby County could operate the facility. An agency agreement, as opposed to a transfer, was utilized because ADEM does not interpret its regulations as providing for a transfer within the above-stated 180-day period when the transferee desires renewal of the existing permit. Following the agreement, the location of the facility itself, but not the discharge point, was altered.
I.
First, the Board contends that Shelby County is not the agent of D & D and that no permit exists for the operation of the facility. We disagree.
It is clear from the evidence before us that a permit does exist for the discharge point used by the facility in question.[1] However, the permit was issued to D & D and we, therefore, are compelled to consider whether Shelby County is operating the facility pursuant to an alleged agency agreement with D & D or whether Shelby County is operating the facility without a permit, thereby violating the requirement of a permit. We are of the opinion that Shelby County is operating pursuant to the agency agreement. We note the appellee’s argument that “[tjhere is no provision in either the statute or the regulations which prohibits an NPDES holder from delegating its functions under the permit to an agent for the operation of a sewage treatment facility.” Furthermore, ADEM regulations do not provide a method of transferring a permit within the 180 days preceding renewal of a permit.[2] There was also evidence to indicate that ADEM knew of the agency agreement and agreed to it.
Notwithstanding those facts, however, the trial judge determined that an agency agreement existed, and under the ore tenus rule, his findings will not be disturbed unless palpably wrong. See Nelson v. Littrell Lumber Co., 512 So.2d 1340 (Ala.1987). We are of the opinion that his findings are not “palpably wrong”; therefore, we shall not disturb his determination *270 that Shelby County was acting as agent for D & D.
II.
If, indeed, an agency relationship exists, and we have determined that it does, then the Board argues that there still is no permit for the present facility location, which was altered after issuance of the original permit. While there may be a permit for the original location, the Board contends that the permitting procedure must begin again when the location of the facility is altered. We disagree.
The Environmental Management Commission has addressed the question of whether ADEM has the authority to consider the location and design of a sewage treatment facility before issuing the necessary NPDES permit. The findings of the hearing officer suggest that neither the Board, which claims the location must be considered, nor Shelby County and ADEM, which claim that only the discharge location is considered, are correct. The findings of the hearing officer, adopted unanimously by the Commission, stated, in part, as follows:
“In reviewing the relevant law and regulations which are pertinent to this issue, it must be acknowledged that Section 402(b) of the FWPCA indicates that each state may administer its own program for the issuance of NPDES permits so long as such is comparable to the NPDES permit program. SEE ADEM ADMINISTRATIVE CODE, Reg. 6-6.01, also reference 33 U.S.C., Section 1370. In that regard and upon that authority, the Department has instituted its own rules and procedures for the administration of such a permit program in Alabama.
“In its argument, the Department submits that those regulations allow it to consider only the effect of the discharge at the discharge point and any other matters which deal directly with that discharge. However, the Department contends that the location and design of the facility, at least in this case where such is a considerable distance from the discharge point, is not related to this discharge permit.
“The undersigned agrees with the Department’s assertions, and that of Inter-venor, that the regulations seem to primarily require the Department to consider only the discharge aspect in its issuance of an NPDES permit. However, the undersigned cannot conclude that those regulations preclude the Department, in every imaginable fact situation, from considering other matters such as the design and location of the facility. This is somewhat evidenced by Regulation 6-6.13(e), wherein the Department's own regulations indicate that the issuance of an NPDES permit shall, where applicable, insure compliance with any other requirements of State and Federal laws. Given the fact that Code of Alabama, 1975, Section 22-22-9 requires the Commission to control pollution of the waters of this state (such grants the Commission other more specific powers in that regard), it seems evident that the Department could, should it so choose, consider the location and design of a facility in deciding whether to issue an NPDES permit.
“There appear to be other portions of the Department’s regulations which support this position. Indeed, a reading of the entire chapter of these regulations of the Department (Chapter 6-6) would not indicate that the Department is prohibited from such considerations (location and design) in the issuance of these permits.
“The Code of Alabama, 1975, similarly does not indicate any authority to the effect that the Department is precluded from such considerations in its issuance of an NPDES permit. While that authority does not speak directly to such permits, it does give some guidance to the [hearing officer] in determining the general function of the Department. In controlling water pollution, the Commission is given general authority in Section 22-22-9. Nothing in that chapter would lead one to conclude that the Department is precluded from such considerations (location and design) in its issuance of these permits. Again, while such does not deal *271 directly with NPDES permits, it clearly gives us some direction as to the Commission’s authority. Clearly, Section 22-22-9 gives the Commission general supervisory authority over the administration and enforcement of all laws relating to the pollution of the waters of the State of Alabama. Such would clearly give the Department supervisory power over regulation and enforcement of its own regulations (Chapter 6-6).
“Again, just as with the Department’s regulations, a general reading of the ‘Alabama Water Pollution Control Act’ does not indicate any policy against such considerations. The contrary would seem more apparent.
“As far as Federal regulation, there does not appear to be any prohibition of such considerations in the issuance of such permits. Previous citations herein seem to indicate that states may impose any restrictions or requirements that they see fit so long as they are not less stringent than the Federal requirements.
“The above review indicates that there appears to be no absolute preclusion of these considerations (location and design) by the Department in the issuance of such a permit. While such is not necessarily pertinent to this issue, a question might arise as to whether there might be some set of facts where the location and design of a facility should be considered by the Department in the issuance of such a permit. While the Department does not admit that such could arise, it does admit that there might possibly be some circumstances where they would ‘hold up’ (R. 72) the issuance of an NPDES permit in order to protect the public and the State’s water supply. Such would seem consistent with not only the State Code and the Department’s regulations but also the general function of the Department.
“Perhaps more importantly, the Department admits that it is under no time requirement in the issuance of such permits (R. 72). That, in and of itself, would seem to give great, broad, discretionary power to the Department in the issuance of such permits. Clearly, the best interests of the State’s citizens and their water supply would be the controlling factors.
“In reaching the conclusion of this report, it needs to be remembered that the only question before the [hearing officer] is whether the Department (and now the Commission) had the authority to consider location and design of the plant facility in the issuance of this permit. The question is not whether the Department is required to make such considerations. Nothing in this report should be taken as authority that the [hearing officer] would recommend that the Department must make such considerations. There is no such finding by the [hearing officer]. However, it is the conclusion, recommendation and report of the [hearing officer] that the Department does have the authority to consider location and design of the facility in its issuance of an NPDES permit. To take away or to preclude the Department from such jurisdiction would potentially prejudice the rights of the citizens of Alabama and would, more importantly, be in conflict with the laws of this State.”
The hearing officer determined that ADEM has the authority to consider the facility location, although he found that ADEM is not under a mandate to do so. What then is the effect on the permit of altering something that may or may not figure into ADEM’s issuance of a permit? Certainly, if the facility location were altered and that alteration presented a hazard to the State’s water supply, then ADEM would have the authority to rescind the issued permit. However, if the facility location is altered with ADEM’s knowledge and that alteration does not prove hazardous or out of line with ADEM regulations, then we are of the opinion that the permit is valid. That is to say, alteration of facility location does not automatically revoke an issued permit; however, that permit is revocable if ADEM determines that the alteration is material to the maintenance of the water supply.
*272 For the foregoing reasons, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.

. Although we recognize that the Board’s second argument is that no permit exists because the location of the facility was altered, we will not address this portion of the argument here, as it is considered in the second section of this opinion.

. ADEM regulations require 30 days’ notice pri- or to a transfer; however, 180 days’ notice must be given prior to permit renewal. Should there be a transfer within 180 days of the expiration of a permit, then the transferee cannot meet the 180-day notice requirement for renewal.